IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

UNITED STATES OF AMERICA

v.                                                    Criminal Action No. 3:08-CR-127

EDWARD MOSBY,

                                        Defendant.

## MEMORANDUM OPINION

THIS MATTER comes before the Court on Defendant's Motion to Dismiss Indictment and Motion to Suppress.  As stated from the bench and explained below, Defendant's Motion to Dismiss Indictment is DENIED.  Additionally, with respect to Defendant's Motion to Suppress, the parties have requested the Court to rule on the pleadings.   Having reviewed the pleadings and accompanying exhibits, the Court shall DENY Defendant's Motion to Suppress.

## I.

Mosby is charged in a Second Superseding Indictment as follows: Count One - Fraudulent Demand in violation of 18 U.S.C. § 1003; Count Two - Theft of Government Property in violation of 18 U.S.C. § 641; Count Three - Misuse of Government Computer in violation of 18 U.S.C. § 1030(a)(2)(B); and Count Four - Making a False Statement to Obtain Federal Employee's compensation in violation of 18 U.S.C. § 1920.  The Second Superseding Indictment provides that Mosby was employed by the United States Postal Service ("USPS") as a Manager of Customer Services at the Ridge Branch Post Office in Richmond, Virginia.  The Government alleges that while working full time for the USPS, Mosby entered an agreement with Century 21 to sell real estate as an independent contractor on February 26, 2006, and failed to report to the USPS that he obtained

outside employment as required by 5 C.F.R. § 2635.101(10).  Further, the Government alleges that Mosby left the Post Office to show homes on approximately two hundred and twenty-five occasions from May 19, 2006, until January 19, 2007, and used his government computer to access more than forty thousand real estate web sites during the month of August 2006.  Finally, the Second Superseding Indictment alleges that Mosby, during the period of September 26, 2006, through January 19, 2007, took sick leave from the Post Office under the Family Medical Leave Act ("FMLA"), while continuing to engage in his real estate business, including conducting at least nine real estate transactions.

Mosby moves the Court to dismiss Count One of the Indictment,[1] and to suppress all evidence seized from his work computer and from his doctor, as a result of a search conducted without a warrant and questioning of his doctor on or about August 28, 2007.  The Court discusses each motion in turn.

## II.

### A.

Count One of the Second Superseding Indictment charges Mosby with Fraudulent Demand in violation of 18 U.S.C. § 1003,[2] and provides as follows:

---

[1]The Court notes that Mosby filed his Motion to Dismiss Indictment before the Government filed the Superseding Indictment or the Second Superseding Indictment.  Because Count One was not altered in the Superseding Indictment or the Second Superseding Indictment, the Court considered the merits of Mosby's motion to dismiss.

[2]Section 1003 of Title 18 of the United States Criminal Code provides, in relevant part, that:

Whoever knowingly and fraudulently demands or endeavors to obtain any share or sum in the public stocks of the United States, or to have any part thereof transferred, assigned, sold, or conveyed, or to have any annuity, dividend, pension, wages, gratuity, or other debt due from the United States, or any part thereof, received, or

From on or about September 26, 2006, through January 19, 2007, in the Eastern District of Virginia, and within the jurisdiction of this Court, defendant, EDWARD A. MOSBY, did knowingly and fraudulently demand and endeavor to obtain an annuity, dividend, pension, wages, gratuity, and other debt due from an agency of the United States, in sum of more than one thousand dollars ($1,000.00), received and paid by virtue of a false, forged, and counterfeited power of attorney, authority and instrument, to wit: EDWARD A. MOSBY submitted fraudulent documentation to the USPS indicating that he was unable to work, when in fact, he was engaging in real estate transactions, causing a loss of $18,052.92 to the United States Postal Service for 590.5 hours of sick leave.

(2d Superseding Indictment, Count One.)  In his motion to dismiss, Mosby asserts that he complied with the requirements of the FMLA.  Mosby attaches to his motion documentation from his physician, Dr. Isreal, certifying his inability to work from September 27, 2006, until January 8, 2007.  Dr. Isreal explains that Mosby suffered from chronic duress within his working environment and experienced symptoms including stress, anxiety, forgetfulness, and poor and erratic concentration.  Dr. Isreal states that Mosby was incapacitated and unable to maintain consistent focus and concentration, and posed a danger to himself and to his fellow co-workers.  Dr. Isreal further avers that Mosby's involvement in the real estate business has been therapeutic, and a healthy and contrasting diversion to his job with the USPS.  Accordingly, Mosby argues that he did not submit fraudulent documentation for FMLA benefits and his ability to engage in the real estate business has no bearing on his inability to perform his duties with the USPS.

---

paid by virtue of any false, forged, or counterfeited power of attorney, authority, or instrument, shall be fined under this title or imprisoned not more than five years.

"Section 1003 requires the use of false, forged, or counterfeited documents."  United States v. Gibbs, 192 F. App'x 242, 244 (4th Cir. 2006).

**B.**

Federal Rule of Criminal Procedure 12(b)(3)(B), permits a court to hear a claim that the indictment fails to state an offense. "[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." Hamling v. United States, 418 U.S. 87, 117 (1974).  Generally, "an indictment is sufficient if it alleges an offense in the words of the statute," United States v. Wicks, 187 F.3d 426, 427 (4th Cir. 1999), as long as the words used in the indictment "fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence." Hamling, 418 U.S. at 117 (internal quotation marks omitted).

Nonetheless, "simply parroting the language of the statute in the indictment is insufficient." United States v. Brandon, 298 F.3d 307, 310 (4th Cir. 2002) (internal quotation marks omitted). "When the words of a statute are used to describe the offense generally, they must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offence, coming under the general description, with which he is charged." Id.  Accordingly, a legally sufficient indictment "must also contain a statement of the essential facts constituting the offense charged." Id. (quoting  Fed. R. Crim. P. 7(c)(1)).  Courts regard all well pleaded facts as true when considering a motion to dismiss an indictment.  See United States  v. Nat'l Dairy Prods. Corp., 372 U.S. 29, 33 n.2 (1963); see also  United States v. S. Fla. Asphalt Co., 329 F.2d 860, 865 (5th Cir. 1964), cert. denied, 379 U.S. 880 (1964).

### C.

Mosby argues that the Government cannot establish that he submitted fraudulent documentation to obtain FMLA benefits and that he did not suffer a serious health condition based on his ability to perform the functions of his second job.

Under the FMLA, eligible employees are entitled to take a total of twelve weeks of leave during any twelve-month period for one of several reasons including " a serious health condition that makes the employee unable to perform the functions of the position of such employee."  29 U.S.C. § 2612(a)(1)(D).  As relevant to this case, the FMLA defines a "serious health condition" as an "illness, injury, impairment, or physical or mental condition that involves . . . continuing treatment by a health care provider." 29 U.S.C. § 2611(11)(B).  The regulations promulgated under the statute further explain that

> A serious health condition involving continuing treatment by a health care provider includes . . . a period of incapacity . . . of more than three consecutive calendar days, and any subsequent treatment or period of incapacity relating to the same condition that also involves:  (A) Treatment two or more times by a health care provider, by a nurse or physician's assistant under direct supervision of a health care provider, or by a provider of health care services (e.g., physical therapist) under orders of, or on referral by, a health care provider; or (B) Treatment by a health care provider on at least one occasion which results in a regimen of continuing treatment under the supervision of the health care provider.

29 C.F.R. § 825.114 (a)(2)(i).

The Eleventh Circuit and the Eighth Circuit have determined that "a demonstration that an employee is unable to work in his or her current job due to a serious health condition is enough to show that the employee is incapacitated, even if that job is the only one the employee is unable to perform." Hurlbert v. St. Mary's Health Care Sys., Inc., 439 F.3d 1286, 1295 (11th Cir. 2006);

accord <u>Stekloff v. St. John's Mercy Health Sys.</u>, 218 F.3d 858, 861 (8th Cir. 2000).[3]  Both circuits

reached this conclusion when deciding whether to reverse a district court's decision to grant

summary judgment on cases involving plaintiffs who were terminated in violation of the FMLA.

<u>Id.</u>  The Eleventh and Eighth Circuits both rejected defendants' claims that, as a matter of law, the

plaintiffs could not have experienced an inability to work within the meaning of section

825.114(a)(2)(i) when the plaintiff continued to perform a second job.  <u>Id.</u>  Instead, both courts

concluded that a reasonable jury could find that the plaintiff's health condition rendered the plaintiff

incapable of performing his duties at one job, despite the plaintiff's ability to perform another job.

<u>Id.</u>  In short, whether the plaintiff was incapacitated within the meaning of the FMLA was an issue

of material fact to be determined by the jury.

Similarly, whether Mosby's performance of his second job evinces his ability to perform his

duties at the USPS is a question of fact which hinges on the similarity in the job functions.  In

essence, Mosby challenges the sufficiency of the Government's evidence, which is more

appropriately addressed under Rule 29 of the Federal Rules of Criminal Procedure, after the

Government closes its evidence or after the close of all the evidence.  <u>See</u> Fed. R. Crim. 29; <u>see also</u>

<u>United States v. Vinyard</u>, 266 F.3d 320, 324 (4th Cir. 2001) (noting that the defendant's challenge

to the applicability of the federal mail fraud statute to his case constituted a challenge to the denial

of his motion for judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal

Procedure, not a denial of his motion to dismiss the mail fraud charges).  As stated previously, a

motion to dismiss an indictment tests the sufficiency of the allegations that the Government has set

forth - it does not require the Government to prove its case.  Here, the Government has has set forth the

---

[3]Mosby did not cite nor did this Court find any Fourth Circuit cases addressing this issue.

elements of the offense and sufficient facts to notify Mosby of the charges and allegations against him.  Thus, a dismissal pursuant to Rule 12(b) would be improper.

## III.

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ."  U.S. Const. amend. IV; see O'Connor v. Ortega, 480 U.S. 709, 715 (1987); United States v. Simons, 206 F.3d 392, 398 (4th Cir. 2000).  To prove a violation of Fourth Amendment rights, Mosby must first establish that he had "a legitimate expectation of privacy in the place searched or the item seized," which he may demonstrate by showing that "his subjective expectation of privacy is one that society is prepared to accept as objectively reasonable."  Simons, 206 F.3d at 398.  In essence, a "legitimate expectation of privacy exists when the individual seeking Fourth Amendment protection maintains a subjective expectation of privacy in the area searched that society [is] willing to recognize . . . as reasonable."  Doe v. Broderick, 225 F.3d 440, 450 (4th Cir. 2000) (internal quotation marks omitted).  Once the defendant establishes that he had a legitimate expectation of privacy, the Court must next determine whether the warrantless search[4] was reasonable under the Fourth Amendment.  Simons, 206 F.3d at 399.  Determining the reasonableness of the search requires a two step inquiry: (1) "whether the action was justified at its inception" and (2) "whether the search as actually conducted was reasonably related in scope to the circumstances which justified the interference in the first place."  O'Connor, 480 U.S. at 726 (internal quotation marks omitted).

---

[4]Warrantless searches are presumptively illegal, and must fall within one of the enumerated exceptions to the warrant requirement.  Katz v. United States, 389 U.S. 347 (1967).  The O'Connor court recognized an exception to the warrant requirement where the search is directed at obtaining evidence of suspected work-related misconduct.  480 U.S. at 722; see also Simons, 206 F.3d at 400.

7

In this instance, Mosby contends that the Government violated his rights under the Fourth and Fourteenth Amendments when it (1) searched his work computer and (2) obtained and disclosed his health information. Therefore, Mosby moves the Court to suppress the evidence resulting therefrom.  The Court discusses each challenge in turn.

## A.

Although a government employee may have a legitimate expectation of privacy in his office or in parts of his office, such an expectation of privacy may be reduced by office practices, procedures, or regulations.  Broderick, 225 F.3d at 450 (citing O'Connor, 480 U.S. at 716-18).  The Court in O'Connor observed that questions of a public employee's reasonable expectation of privacy must be addressed on a case-by-case basis.  480 U.S. at 722.

Here, Mosby argues that he possessed a reasonable expectation of privacy in his work computer.  The Government rejoins that Mosby's computer contained the following warning banner and, therefore, Mosby had no reasonable expectation of privacy:

> This is a U.S. Government computer system and is intended for official and other authorized use only.  Unauthorized access or use of this system may subject violators to administrative action, civil, and/or criminal prosecution under the United States Criminal Code (Title 18 U.S.C. § 1030).

> All information on this computer system may be monitored, intercepted, recorded, read, copied, or captured and disclosed by and to authorized personnel for official purposes, including criminal prosecution.  You have no expectation of privacy under this system.

> Any authorized or unauthorized use of this computer system signifies consent to and compliance with Postal Service policies and this terms [sic].

> I agree.

(United States Mem. Opp'n Mot. to Suppress ["Opp'n"] at  4.)  The Government further contends that to open the computer and perform any actions, Mosby had to click on the words "I agree," each

8

time he or she signed on. Accordingly, the Government contends that Mosby had no privacy rights on his government computer.

Analyzing the specific facts presented in the case, courts ruling on the issue of whether a warning banner on a computer screen or particular computer usage policy diminished a defendant's expectation of privacy have varied. The Fourth Circuit in Simons concluded that remote searches of the defendant's computer did not violate his Fourth Amendment rights because the public employer's internet policy clearly stated that the employer would audit, inspect, and/or monitor employees' use of the internet. 206 F.3d at 398; see also United States v. Angevine, 281 F.3d 1130, 1134-35 (10th Cir. 2002) (upholding a seizure of a state-owned computer because defendant had no reasonable expectation of privacy in the computer in light of splash screen warning of criminal penalties for misuse and of the employer's right to conduct inspections to protect business-related concerns); Muick v. Glenayre Electronics, 280 F.3d 741, 743 (7th Cir. 2002) (finding that an employee had no reasonable expectation of privacy in laptop files where employer announced it could inspect laptops it furnished to employees and employer owned laptops); United States v. Bailey, 272 F. Supp. 2d 822, 824, 835 (D. Neb. 2003) (determining that defendant had no reasonable expectation of privacy in his work computer because he consented to a flash-screen warning every time he used the computer).[5]

---

[5]But see Leventhal v. Knapek, 266 F.3d 64, 74 (2d Cir. 2001) (concluding that although the technical support staff had access to all computers and the employer had an anti-theft policy prohibiting use of computers for personal business, the office practices showed that the employee had exclusive use of his computer and searches of his computer for maintenance purposes were generally infrequent and announced); United States v. Slanina, 283 F.3d 670, 676 (5th Cir. 2002) (holding that the defendant's expectation of privacy was reasonable because the employer did not have a policy that prevented the storage of personal information on city computers nor did it notify the employees that the computers were monitored).

But, in <u>United States v. Long</u>, 64 M.J. 57 (C.A.A.F. 2006), the United States Court of Appeals for the Armed Forces held that an employee had a reasonable expectation of privacy in emails sent from her work computer even though there was a flash screen warning at log-in.  <u>Id.</u> at 64.  The court reasoned that the policies and practices of the employer, requiring individual users to have passwords known only to themselves and to change their passwords periodically to ensure privacy and limiting outside network access to the network administrator, reaffirmed rather than reduced the expectations of privacy on office computers.  <u>Id.</u>  The court in <u>Long</u> distinguished <u>Simons</u> on the basis that the policy in <u>Simons</u> was "very specific," restricted use to official business, and notified the user that the system was subject to inspection.  <u>Long</u>, 64 M.J. at 65.  Further, the log-on banner at issue in <u>Long</u> omitted the notification that users had no expectation of privacy in use of the system.  <u>Id.</u>

Similar to <u>Simons</u>, the warning banner at issue here clearly informs the employee that he has no expectation of privacy and states that the computer is monitored and may be intercepted for official use, including criminal prosecution.  Moreover, Mosby had to acknowledge and agree to the policy every time he used the computer.  Thus, in light of the detailed warning banner and Mosby acknowledging the warning every time he logged onto the computer, the Court finds that Mosby had no legitimate, objectively reasonable expectation of privacy in his work computer.  As such, it is unnecessary for the Court to determine whether the search was reasonable.  <u>See</u> <u>Simons</u>, 206 F.3d 392 at 398; <u>see also</u> <u>Leventhal</u>, 266 F.3d at 73 ("Without a reasonable expectation of privacy, a

workplace search by a public employer will not violate the Fourth Amendment, regardless of the search's nature and scope.").[6]

## B.

Next, Mosby argues that the Government violated his Fourteenth Amendment right and expectation of privacy and his Fourth Amendment right to be free from unreasonable searches and seizures when it obtained and disclosed Mosby's health information, which is protected by the Health Insurance Portability and Accountability Act of 1966, 42 U.S.C. § 1320d et seq. ("HIPAA"). Specifically, Mosby maintains that the USPS contacted his physician to obtain confidential medical information without his knowledge or consent. Further, USPS agents interviewed Mosby's doctor and reviewed his medical records without Mosby's consent. The Government rejoins that (1) Mosby waived his privacy rights for official representatives of the U.S. Department of Labor, Office of Workers' Compensation Program, to examine and copy any records concerning Mosby; and (2) there is a law enforcement exception to HIPAA.

The Government's arguments are persuasive. First, Government's Exhibit 1 demonstrates that on October 13, 2006 Mosby completed and signed a Notice of Occupational Disease and Claim for Compensation. Just above his signature, Mosby authorizes

> any physician or hospital (or any other person, institution, corporation, or government agency) to furnish any desired information to the U.S. Department of Labor, Office of Workers' Compensation Programs (or to its official representative). This authorization also permits any official representative of the Office to examine and to copy any records concerning me.

---

[6]Additionally, it does not appear that Mosby challenges the reasonableness of the search as neither Mosby nor the Government provided any details in their briefs as to how the search of Mosby's computer was conducted (i.e., whether the computer was located in an office, was confiscated, or whether the files were downloaded remotely).

(Opp'n., Ex. 1.)    Thus, Mosby waived any expectation of privacy with respect to his medical records when he voluntarily applied for medical benefits and consented to furnishing the U.S. Department of Labor with copies of the same.  See United States v. Rendini, 738 F.2d 530, 534 (1st Cir. 1984) (affirming the district court's denial of the defendant's motions to suppress his medical records on the ground that their production would violate his Fourth Amendment rights where the defendant voluntarily applied for an accidental disability pension, which required the use of the medical records, and in doing so, waived any expectation of privacy).[7]

Second, with the respect to the HIPAA violations raised, although a medical facility may not disclose protected health information without the written consent or authorization of the individual, 45 C.F.R. § 164.512(a)(1), the HIPAA regulations lists some exceptions.  Specifically, 45 C.F.R. § 164.512(f) permits the disclosure of protected health information for law enforcement purposes, including

> An administrative request, including an administrative subpoena or summons, a civil or an authorized investigative demand, or similar process authorized under law, provided that: (1) The information sought is relevant and material to a legitimate law enforcement inquiry; (2) The request is specific and limited in scope to the extent reasonably practicable in light of the purpose for which the information is sought; and (3) De-identified information could not reasonably be used.

---

[7]But cf. Broderick, 225 F.3d at 450-51(finding that the defendant had a subjective expectation of privacy in his medical records and files kept at the methadone clinic, and that society is willing to recognize the defendant's expectation as objectively reasonable because 42 U.S.C. § 290dd-2 limits the access of medical records relating to substance abuse treatment more difficult for criminal investigation purposes).  Broderick, a Fourth Circuit case, is distinguishable from the instant case because Broderick addressed medical records pertaining to substance abuse treatment and the defendant in Broderick, unlike Mosby, did not consent to the search and inspection of his medical records. 225 F.3d at 450-51.

45 C.F.R. § 164.512(f)(1)(C).  Here, the Government has attached a copy of the letter given to Mosby's physician explaining this HIPAA exception.  The Government, however, has not attached a copy of the actual request for the records so that the Court may determine whether the request was relevant, specific and limited in scope as required under the regulation.  Nonetheless, given Mosby's broad authorization permitting "any official representative of the Office to examine and to copy any records concerning me," the Court finds that Mosby did not have a legitimate expectation of privacy in the medical records.  As such, the reasonableness and scope of the search is immaterial.  See Simons, supra, 206 F.3d 392 at 398; Leventhal, supra, 266 F.3d at 73.

## IV.

For the foregoing reasons, the Court DENIED Mosby's Motion to Dismiss Indictment and shall DENY Mosby's Motion to Suppress.

An appropriate Order shall issue.

_____/s/_____
James R. Spencer
Chief United States District Judge

Entered this __25th__ day of July 2008

13